IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AMERICAN FAMILY HOME INSURANCE COMPANY, *as subrogee of* Adrian Biesecker, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:22-cv-01392-LMM |
| KRAUSE FAMILY MOTORCARS, LLC and MCLAREN AUTOMOTIVE, INC., | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## ORDER

This case comes before the Court on a motion to dismiss for lack of personal jurisdiction filed by Defendant McLaren Automotive, Inc. ("MAI"). Dkt. No. [10]. After due consideration, the Court enters the following Order.

## I. LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to challenge a plaintiff's claim by filing a motion to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."

Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010) (internal quotation marks omitted); accord Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 (11th Cir. 1999). "The court construes the allegations in the complaint as true to the extent that they are uncontroverted by defendant's evidence." Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa, Okla., 245 F. Supp. 2d 1248, 1253 (N.D. Ga. 2002).

If the defendant challenges the plaintiff's allegations of jurisdiction and supports the challenge with affidavit evidence, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. Diamond Crystal Brands, Inc., 593 F.3d at 1257. "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Id. (internal quotation marks omitted). Motions to dismiss for lack of personal jurisdiction filed at the pleading stage should be "treated with caution" and granted only if the plaintiff has failed to allege "sufficient facts . . . to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." Bracewell v. Nicholson Air Servs., Inc., 680 F.2d 103, 104 (11th Cir. 1982).

## II.   BACKGROUND

On March 23, 2021, Adrian Biesecker purchased a 2021 McLaren 765LT (hereinafter, "the Vehicle") from Motorcars of Jackson, LLC ("Motorcars of Jackson"), located in Mississippi. Dkt. No. [1] ¶¶ 5, 8. Plaintiff American Family Home Insurance Company was Mr. Biesecker's automotive insurer. Id. ¶ 1.

The next day, Motorcars of Jackson told Mr. Biesecker that before the Vehicle would be delivered to him, it would first be transported to Krause Family Motorcars, LLC ("Krause") in Georgia for warranty work, to fix a problem with the fuel-level sensor, among other things. Id. ¶¶ 12-13. Krause completed its work on the Vehicle on or about April 14, 2021, and had the Vehicle transported to Mr. Biesecker in Pennsylvania. Id. ¶¶ 21, 22.

On April 21, 2021, Mr. Biesecker drove the Vehicle to a local gas station to fuel it for the first time. Id. ¶ 23. It had 156 miles on the odometer. Id. Approximately twelve seconds after Mr. Biesecker began refueling the Vehicle, it erupted into flames and was destroyed. Id.

Plaintiff paid Mr. Biesecker's insurance claim under his auto policy and, as Mr. Biesecker's subrogee, filed this lawsuit against MAI and Krause. Id. ¶¶ 24, 25. The complaint asserts three counts against both defendants: in Count One, Plaintiff alleges that MAI negligently directed, monitored, and supplied materials to Krause, which in turn performed substandard and negligent work upon the Vehicle, as MAI's agent, id. ¶¶ 27-33; in Count Two, Plaintiff alleges that MAI and Krause violated the Magnuson Moss Warranty-Federal Trade Commission Improvements Act, 15 U.S.C. § 2301, et seq., and breached the implied warranties of merchantability and fitness for a particular purpose by failing to repair noticed defects, nonconformities, and malfunctions in the Vehicle, id. ¶¶ 35-44; and in Count Three, Plaintiff alleges that the same failures constitute breach of an express warranty, id. ¶¶ 46-51.

MAI now moves the Court to dismiss the claims asserted against it on grounds that the Court lacks personal jurisdiction over it. Dkt. No. [10].

## III.  DISCUSSION

MAI contends that this Court, which sits in Georgia, has neither general nor specific personal jurisdiction over it and that asserting personal jurisdiction over it would offend traditional notions of fair play and substantial justice because this lawsuit's "only connection with Georgia is that Krause repaired [the Vehicle] in Georgia, long after MAI originally distributed [it] to McLaren Boston in Massachusetts in October 2020." Dkt. No. [10-1]. In support, MAI proffers a sworn declaration of its Client Services Manager, Pat Dahlberg, who attests that MAI was formed under the laws of Delaware; that its principal place of business, key files, and business records are in Texas, where its corporate and strategic business decisions are made by management; that it does not own or lease property or maintain any facilities, offices, or employees in Georgia; and that the Vehicle was not distributed, sold, designed, manufactured, or assembled in Georgia. Dkt. No. [10-2] ¶¶ 1-3, 6, 7. Mr. Dahlberg further attests that MAI is a distributor and does not design, manufacture, or assemble vehicles; that Motorcars of Jackson is not an authorized McLaren dealer; that MAI sold and delivered the Vehicle to a Boston dealership in October 2020, did not distribute the Vehicle to Motorcars of Jackson, did not service or repair the Vehicle after it was distributed to McLaren Boston, and was not involved with the Vehicle being transported to Motorcars of Jackson in Mississippi or to Krause in Georgia for

repair; and that Krause is an independent McLaren dealership owned and operated by individuals and/or entities unaffiliated with MAI. Id. ¶¶ 4, 5, 8-13.

In response, Plaintiff does not attempt to show that the Court may exercise general personal jurisdiction over MAI, although it asserts that "it may well be that there is a basis for this Court" to do so.[1] Dkt. No. [20]. Instead, it argues that despite the evidence presented by MAI, other evidence shows that there is specific personal jurisdiction. Id. Having carefully reviewed the arguments and proffers of evidence, the Court agrees.

Specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum [] and is therefore subject to the [forum's] regulation." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Diamond Crystal Brands, Inc., 593 F.3d at 1257-58 (internal quotation marks omitted). The Eleventh Circuit Court of Appeals has cautioned that district courts in Georgia

---

[1]     This may well be so, as the Supreme Court of Georgia has held that an entity "registered and authorized to do business in Georgia," as MAI has been since 2019, Dkt. No. [21-1] at 2, is "subject to the general jurisdiction of [Georgia's] courts." Cooper Tire & Rubber Co. v. McCall, 863 S.E.2d 81, 92 (Ga. 2021). Nevertheless, because Plaintiff did not argue that general jurisdiction applies, the Court will not decide the motion on this basis.

should take care not to conflate these two inquiries because Georgia's long-arm statute does not provide personal jurisdiction that is coextensive with due process. Id. at 1259. Instead, the long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." Id.

### A.    Georgia Long-Arm Statute

Georgia's long-arm statute, O.C.G.A. § 9-10-91, allows for the exercise of personal jurisdiction over a nonresident defendant who "[t]ransacts any business within this state." O.C.G.A. § 9-10-91(1). A non-resident defendant is said to have "transacted business" in Georgia for the purposes of personal jurisdiction only where: (1) the nonresident defendant "has purposefully done some act or consummated some transaction" in Georgia; (2) the plaintiff's claims arise out of or are connected with that act or transaction; and (3) the exercise of jurisdiction does not offend traditional notions of fairness and substantial justice. Drumm Corp. v. Wright, 755 S.E.2d 850, 853 (Ga. Ct. App. 2014) (internal quotation marks omitted). The "transacting any business" standard is applied liberally, and jurisdiction will be upheld, even for a single event, if the effect of a defendant's action in the forum is "substantial." Ga. R.R. Bank & Tr. v. Barton, 315 S.E.2d 17, 19 (Ga. Ct. App. 1984); accord Stanton v. Harris, 848 S.E.2d 186, 188 (Ga. Ct. App. 2020) (citing Innovative Clinical Consulting Servs., LLC v. First Nat'l Bank of Ames, 620 S.E.2d 352, 355 (Ga. 2005)). The non-resident defendant need not be physically present in Georgia while transacting business to satisfy the

subsection, and courts consider the nonresident's tangible and intangible conduct, such as "mail, telephone calls, and other 'intangible' acts"—even if they occurred outside Georgia—to determine "whether it can fairly be said that the nonresident has transacted any business within Georgia." Diamond Crystal Brands, Inc., 593 F.3d at 1260-61, 1264.

Following careful review, the Court finds that Georgia's long-arm statute is satisfied.

### 1. *Purposeful Act or Transaction*

Plaintiff has shown evidence that MAI "has purposefully done some act or consummated some transaction" in Georgia. The Georgia Secretary of State's records indicate that MAI has been registered to do business in Georgia since 2019. Dkt. No. [21-1] at 2. Plaintiff also shows that MAI had a Dealer Sales and Service Agreement ("Agreement") with Krause, which appointed Krause to operate "as an Authorized Dealer" at 7865 Roswell Road, in Atlanta, Georgia, with respect to the sale of "[r]oad cars manufactured by McLaren" and other McLaren products and "the provision of "repair and maintenance services performed on [McLaren road cars,] including warranty repairs [and] servicing." Dkt. No. [21-3] at 2-5, 9, 47, 48.[2] The Agreement further required that Krause perform any work required under a McLaren warranty; that it do so according to

---

[2]     Where a document's original pagination conflicts with the pagination assigned by the Court's electronic filing system, the Court will use the page numbers assigned by its system.

MAI's policies and procedures; and that it purchase vehicles, parts, and merchandise only from MAI, companies associated with MAI, spare-parts providers nominated by MAI, and other agents and dealers authorized by MAI. Id. at 9-11, 21. Under the Agreement, Krause was also obligated to "vigorously promote" the sale of McLaren vehicles and other products and participate in MAI's advertising campaigns. Id. at 13, 16. On these grounds, the Court finds that MAI purposefully undertook action and consummated transactions in Georgia.

**2.    *Relationship Between MAI's Transactions and Plaintiff's Claims***

Plaintiff has also shown that its claims are connected to MAI's purposeful conduct in Georgia. The Vehicle was sent to Krause for what was expected to be warranty work, which Krause was required under the Agreement to perform and which would necessarily have involved parts purchased from MAI or providers mandated by MAI. Dkt. No. [1] ¶¶ 13, 14, 21, 29; Dkt. No. [21-3] at 9-11, 21. Plaintiff also proffers text messages that appear to be reduceable to admissible evidence—or at least likely to lead to admissible evidence in discovery—and, taken in the light most favorable to Plaintiff, as the non-moving party, suggest that MAI provided Krause with at least some of the parts used in the work performed on the Vehicle and provided advice regarding the repairs. See Dkt. No. [21] ¶ 6; Dkt. No. [21-6] at 2-3, 6, 10-13. The Court therefore finds that there is a relationship between Plaintiff's claims and MAI's Georgia acts and transactions.

### 3.   *Fairness and Substantial Justice*

Finally, the exercise of jurisdiction does not offend traditional notions of fairness and substantial justice. The Court considers "whether the exercise of jurisdiction is reasonable—that is, to ensure that it does not result solely from random, fortuitous or attenuated contacts." Crossing Park Props., LLC v. JDI Ft. Lauderdale, LLC, 729 S.E.2d 605, 609 (Ga. Ct. App. 2012) (internal quotation marks omitted). "Due process requires that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." Id. at 610 (internal quotation marks omitted).

In this case, the claims do not result solely from random, fortuitous, or attenuated contacts. MAI entered into the Agreement with Krause—a Georgia dealership—to perform repair work on McLaren vehicles in Georgia, mandated the procedures for Krause to use in performing the work, and dictated the sourcing of the parts to be used in performing the work. Dkt. No. [21-3] at 2-5, 9-11, 21, 47. It also mandated that Krause market MAI products and otherwise promote its business interests. Id. at 13, 16. This should have provided MAI fair warning that it may be subject to suit in Georgia for claims related to the spare parts and repair work.

For these reasons, the Court concludes that Georgia's long-arm statute is satisfied.

### B.    Due-Process Analysis

Next, the Court must consider whether exercising jurisdiction under the Georgia long-arm statute comports with due process. Specifically, courts look to whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980)). When considering whether specific personal jurisdiction applies, the Eleventh Circuit uses a three-part due-process test, which examines whether (1) the plaintiff's claims " 'arise out of or relate to' at least one of the defendant's contacts with the forum"; (2) "the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws"; and (3) "the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.' " Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013). It is the plaintiff's burden to establish the first two prongs, and if it does so, the defendant "must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Diamond Crystal Brands, Inc., 593 F.3d at 1267.

#### 1.    *Purposeful Availment*

Considering the factors in their logical order, the Court first looks to the "purposeful availment" prong of the due-process analysis. This prong requires evaluation of the defendant's contacts with the forum state and asks if those

contacts "involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum." Louis Vuitton Malletier, S.A., 736 F.3d at 1357; see also Hanson v. Denckla, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").

In this case, MAI purposefully availed itself of the privileges of doing business in Georgia. MAI registered with the Georgia Secretary of State to do business in Georgia. Dkt. No. [21-1] at 2. It also entered into the Agreement with Krause that appointed Krause to operate "as an Authorized Dealer" in Atlanta, which included "the provision of "repair and maintenance services performed on [McLaren road cars,] including warranty repairs [and] servicing." Dkt. No. [21-3] at 2-5, 9, 47. The Agreement further mandated that Krause perform any work required under a McLaren warranty; that it do so according to MAI's policies and procedures; and that it purchase vehicles, parts, and merchandise only from MAI or another company authorized by MAI. Id. at 9-11, 21. The Agreement also obligated Krause to "vigorously promote" the sale of McLaren vehicles and other products and participate in MAI's advertising campaigns. Id. at 13, 16. These facts show that MAI purposefully availed itself of the privilege of conducting activities in Georgia.

## 2.    *Relatedness*

The Court next considers whether the plaintiff's claims "arise out of or relate to at least one of the defendant's contacts with the forum." <u>Louis Vuitton Malletier, S.A.</u>, 736 F.3d at 1355 (internal quotation marks omitted). The inquiry " 'focus[es] on the direct causal relationship between the defendant, the forum, and the litigation.' " <u>Id.</u> at 1355–56 (citing <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984)).

Plaintiff has also shown that its claims relate to MAI's contacts with Georgia. The Agreement required Krause to perform warranty work—which the work on the pre-delivery Vehicle appeared to be—and to use MAI-approved parts. Dkt. No. [1] ¶¶ 13, 14, 21, 29; Dkt. No. [21-3] at 9-11, 21. Krause communications also indicate that MAI provided Krause with parts and advice on the repair of the Vehicle. <u>See</u> Dkt. No. [21] ¶ 6; Dkt. No. [21-6] at 2-3, 6, 10-13. The Court thus concludes that Plaintiff's claims "arise out of or relate" to MAI's contacts in Georgia.

## 3.    *Fair Play and Substantial Justice*

Lastly, the Court must determine whether exercising personal jurisdiction over MAI will comport with traditional notions of fair play and substantial justice. <u>See</u> <u>Int'l Shoe Co. v. State of Wash., Off. of Unemp. Comp. &  Placement</u>, 326 U.S. 310, 320 (1945); <u>Louis Vuitton Malletier, S.A.</u>, 736 F.3d at 1355. When considering this prong of the specific-jurisdiction analysis, courts may evaluate the burden on the defendant, the forum state's interest in adjudicating the

dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. World-Wide Volkswagen Corp., 444 U.S. at 292. While these factors are instructive, the Supreme Court has held that "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp., 471 U.S. at 477.

MAI argues that "Georgia has no legitimate interest in litigating this matter" because the Vehicle was not designed, manufactured, assembled, or sold in Georgia; MAI did not direct the Vehicle to Georgia; the fire occurred in Pennsylvania; and Plaintiff does not reside in Georgia. Dkt. No. [10] at 13-14.

Despite these arguments, the Court finds that exercising personal jurisdiction over MAI will comport with traditional notions of fair play and substantial justice. It first bears noting that MAI does not "attempt to explain why litigating in Georgia would be especially onerous, much less how any such inconvenience achieves a 'constitutional magnitude.' " Diamond Crystal Brands, Inc., 593 F.3d at 1274 (quoting Burger King Corp., 471 U.S. at 484). Additionally, Georgia has a legitimate interest in adjudicating the dispute because it is alleged that the fire was a result of repairs performed in Georgia according to the Agreement, which required Krause to make repairs according to MAI's practices

13

and procedures and use MAI-approved parts. Georgia has an interest in protecting consumers from dangerous products and services performed in Georgia. See Burger King Corp., 471 U.S. at 473 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). While the fire did occur in Pennsylvania, after the car was shipped there from Georgia, it is common sense that faulty repair work undertaken in Georgia also presents a danger to Georgians. Maintaining the lawsuit in Georgia also serves Plaintiff's and the interstate judicial system's interest in convenience and efficiency, since it allows the claims to be adjudicated where Krause made the repairs and the bulk of the evidence therefore is likely to be found.

Moreover, as previously discussed, MAI is registered to do business in Georgia, Dkt. No. [21-1] at 2, and purposefully directed its activities toward Georgia residents, which created the conditions leading to the repair of the Vehicle by Krause using MAI-mandated parts and procedures, see supra Parts III.A.1.-2., B.1.-2. Accordingly, it should come as no surprise to MAI that it would be haled into court here.

For all of these reasons, the Court concludes that MAI's motion to dismiss this action for lack of personal jurisdiction is due to be denied.

## IV.    CONCLUSION

MAI's motion to dismiss this action for lack of personal jurisdiction, Dkt.

No. [10], is **DENIED**.

**IT IS SO ORDERED** this 30th day of November, 2022.

**Leigh Martin May**
**United States District Judge**