# EXHIBIT 5

# In The Matter Of:
*American Family Insurance, et al. v.*
*McLaren Automotive, et al.*

*Derick M. Lee*
*February 27, 2023*
*Video Deposition*

*Regency-Brentano, Inc.*
*13 Corporate Square*
*Suite 140*
*Atlanta, Georgia 30329*
*404.321.3333*



REGENCY-BRENTANO, INC.
Certified Court Reporters

**Min-U-Script® with Word Index**

**Video Deposition**

```
 1            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
 2                     ATLANTA DIVISION

 3

 4

 5   AMERICAN FAMILY HOME
     INSURANCE COMPANY, as
 6   Subrogee of Adrian Biesecker,

 7        Plaintiff,
                                         CIVIL NO.:
 8   vs.                                 1:22-CV-01392-LMM

 9   MCLAREN AUTOMOTIVE, INC.,
     and KRAUSE FAMILY MOTORCARS, LLC,
10
          Defendants.
11
     ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
12              VIDEOTAPED DEPOSITION OF
                    DERICK M. LEE
13

14              February 27, 2023
                    10:17 a.m.
15

16        Miller Insurance Law Enterprise
           115 Perimeter Center Place
17           South Terraces, Suite 430
               Atlanta, Georgia
18

19      Michelle R. Lowe, RPR, CCR-2748

20

21            REGENCY-BRENTANO, INC.
             CERTIFIED COURT REPORTERS
22              13 Corporate Square
                    Suite 140
23            Atlanta, Georgia 30329
                  404-321-3333
24

25
```

Regency-Brentano, Inc.

```
 1   APPEARANCE OF COUNSEL:
 2   On behalf of the Plaintiff:
 3            MARIE CHEUNG-TRUSLOW
 4            Attorney at Law
 5            LAW OFFICES OF MARIE CHEUNG-TRUSLOW
 6            101 Arch Street, 8th Floor
 7            Boston, Massachusetts  02110
 8            617-539-8674
 9            marie@cheungtruslowlaw.com
10
11   On behalf of the Defendant, McLaren Automotive,
12   Inc.:
13            RYAN E. COSGROVE
14            Attorney at Law
15            NELSON MULLINS
16            Pacific Gateway, Suite 900
17            19191 South Vermont Avenue
18            Torrance, California  90502
19            424-221-7404
20            ryan.cosgrove@nelsonmullins.com
21
22
23
24
25
```

```
 1   CONTINUED APPEARANCE OF COUNSEL:
 2   On behalf of the Defendant, Krause Family Motorcars,
 3   LLC:
 4           ADAM KLEIN
 5           Attorney at Law
 6           FAIN MAJOR & BRENNAN PC
 7           5605 Glenridge Drive
 8           Suite 900
 9           Atlanta, Georgia 30342
10           404-688-6633
11           aklein@fainmajor.com
12
13   Also Present:
14           Henry Stewart, Videographer
             Atlanta Legal Media
15
16
17
18
19
20
21
22
23
24
25
```

1  time.
2       Q    Okay.
3       A    So they would then, you know, require me
4  to get that information, seeing as though I'm the
5  lead of -- of that brand.
6       Q    I see.
7            And what information did you give to
8  McLaren?
9       A    Exactly what we have already talked about.
10 I showed them the damage -- the moment that we
11 pulled the engine floor and we seen that there was
12 outside influence, McLaren 765 was like, we're done
13 here.  Which makes sense.  They -- they didn't -- a
14 rodent or any sort of outside influence has nothing
15 to do with McLaren.
16      Q    Okay.  We'll talk about the poor rodent.
17      A    Sure.
18      Q    I actually saw the skeleton.
19      A    Isn't that weird?
20      Q    All right.  How did the service call come
21 to -- do you know how the service call came to
22 MotorCars of Atlanta?
23      A    I do not.
24      Q    All right.  So all you know is that you
25 have this assignment and you're going to go with the

1    information.
2             So, again, we follow the steps of SIS,
3    which I further explained earlier to place the
4    vehicle onto the -- to the lift, raise the vehicle
5    up.
6             When we got to the point where we had
7    removed the engine floor -- once we got to removal
8    of the engine floor, we noticed the -- the rodent
9    damage that was in there.
10        Q   Okay.  So let's talk about what you
11   thought was rodent damage.  I'm -- it's in your
12   package.  There's a couple of photographs of the --
13   it's Exhibit Number 11.
14            (Krause Deposition Exhibit P-11 was marked
15   for identification and attached to the transcript.)
16        A   Yes.
17   BY MS. CHEUNG-TRUSLOW:
18        Q   Do you see it's seven photographs?
19        A   Yes.
20        Q   Who took these photographs?
21        A   This would have been somebody in my
22   service department.  I don't recall exactly who.  I
23   think it might have been my service manager.  It's
24   all an assumption.
25        Q   And who is your service manager?

1   the top of the fuel tank.
2       Q    Okay.  And then how did you go about
3   further work?
4       A    At that point in time we got -- we ran the
5   information through to the client at that time,
6   because it's their vehicle and they would have to be
7   fronting the bill.  McLaren didn't put a rodent in
8   the car.
9            So we would say, hey, do you want to
10  authorize this repair to move forward?  That would
11  who all be, you know, front desk area.  I don't -- I
12  have no authority of what they decide to do or not.
13           I just tell them, my next step is to
14  remove the fuel tank to assess further damage.
15      Q    Okay.
16      A    I was given the greenlight to go ahead and
17  remove the fuel tank to then assess the damage.  So
18  we removed the fuel tank and I was able to identify
19  that -- the fuel feed off of the fuel tank you could
20  see was damaged; it was chewed on.  And then also
21  the harness was -- was chewed on as well.
22      Q    So the harness we're talking about is the
23  wiring harness --
24      A    Correct.
25      Q    -- from the tank?

```
1      Q    Do you know when he worked there?
2      A    I don't have the exact dates, no.
3      Q    Do you know when he left?
4      A    I do not, exact dates.
5      Q    Do you know what circumstances he left?
6      A    I do not.
7      Q    Do you know where he is?
8      A    I do not.
9           MS. CHEUNG-TRUSLOW:  All right.  Thank
10  you.
11          THE WITNESS:  Thank you.
12          MR. COSGROVE:  I just have a few
13  questions.  Everyone okay to --
14      EXAMINATION BY COUNSEL FOR THE DEFENDANTS
15  BY MR. COSGROVE:
16     Q    So is it okay if I also call you Derick?
17     A    Yes.
18     Q    So, Derick, I'm Ryan Cosgrove.  I
19  represent McLaren Automotive, Inc.
20     A    Okay.
21     Q    Just a few questions to clarify a few
22  things.
23          You mentioned in regard to Exhibit 7, the
24  repair order, that you had contacted McLaren to let
25  them know what was going on because it was a new
```

```
 1  vehicle.  Do you recall that?
 2      A     Correct.
 3      Q     When you had the discussion with McLaren,
 4  do you recall who you were talking to?
 5      A     I do not.
 6      Q     But you essentially relayed that there was
 7  rodent damage that you found in the vehicle?
 8      A     Correct.
 9      Q     And what was the response that you
10  received from McLaren?
11      A     Essentially that it's not their fault.
12      Q     Right.  Because that's not a warrantable
13  repair?
14      A     Correct.
15      Q     Was that the end of McLaren's involvement
16  in the repair, in your eyes?
17      A     Yes.
18      Q     Did McLaren do anything to instruct you
19  how to perform the repair beyond what was just in
20  the service manual telling you the different steps
21  to take?
22      A     No.
23      Q     Was that something that you were able to
24  perform all on your own as a qualified technician
25  who's done different types of repairs at the
```

```
 1   dealership?
 2        A    Yes.
 3        Q    You were also asked some questions about
 4   the clutch cooler hose rework recall that you
 5   performed?
 6        A    Okay.
 7        Q    Just to make sure I understand completely,
 8   that repair is really just inserting these clips to
 9   make sure the hoses aren't touching; is that
10   correct?
11        A    That is correct.
12        Q    There's no disconnecting or doing anything
13   of any other sort; is that right?
14        A    In this instance there was no need.  And
15   if you actually follow the steps that are shown in
16   here, there is a hose position check and install
17   clips.  The other one here is a hose change and
18   install clips.  The only time that the hose change
19   would need to be required is if further damage has
20   been seen.  There was no further damage.  Clip
21   install was the only thing we did.
22        Q    Understood.
23             During the repair of the vehicle did you
24   have any difficulties or questions about it that you
25   had to submit a technical request or anything to
```

```
 1   McLaren?
 2        A    No.
 3        Q    Have you done it before with other
 4   repairs?
 5        A    Oh, yeah.  In this instance it was very
 6   cut-and-dried.  There was -- the moment the floor
 7   was removed -- I've been through this rodeo before;
 8   so it was very closed -- open-close ended.
 9        Q    Sure.
10             MR. COSGROVE:  I think that's all I have
11   for you.  Thank you, sir.
12             THE WITNESS:  Thank you.
13             MS. CHEUNG-TRUSLOW:  Thank you.
14             MR. KLEIN:  I just -- just, briefly.
15        EXAMINATION BY COUNSEL FOR THE DEFENDANTS
16   BY MR. KLEIN:
17        Q    You mentioned about the fuel filler neck.
18   I just want to make sure I understand this clearly.
19        A    Yes.
20        Q    My understanding from your testimony, it's
21   a hose with a plastic quick-disconnect at each end;
22   is that right?
23        A    On one end.  So the other end will
24   actually hold the back of the filler bolt, which
25   that hose would sleeve over that -- sleeve over
```